IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DANIEL KAHL, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 230011R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's Notice of Deficiency Assessments dated October 11, 2022, for the 2015 and 2016 tax years. In its amended Answer, Defendant sought to increase the deficiencies for both years based on revised analyses prepared after discovery.

Based on some common business ownership interests, a joint trial was held with *Nidal Kahl and Panayiota Kahl v. Department of Revenue*, TC-MD 230009R, and *Edward Kahl v. Department of Revenue*, TC-MD 230010R. Trial was held in the courtroom of the Oregon Tax Court from January 27, 2025, through January 31, 2025, and on February 5, 2025. Plaintiff did not appear for trial as scheduled.[1] The court scheduled an additional trial date on May 20, 2025, so that Defendant could present evidence supporting the increased deficiency asserted in its Amended Answer. Plaintiff did not appear for the continued trial date, and thus the trial consisted of Defendant's evidence plus cross-examination of its witness.

Hertsel Shadian, Attorney at Law, represented Nidal and Panayiota Kahl, and co-represented Plaintiff. Shawn Bargouti, Certified Public Accountant, represented Edward Kahl and co-represented Plaintiff. Plaintiffs also called Defendant's auditor, Michelle Warren

---

[1] In this Decision, Plaintiff used singularly refers to Daniel Kahl, and Plaintiffs used plurally refers to Daniel Kahl, Nidal Kahl, Panayiota Kahl, and Edward Kahl.

(Warren), as an adverse witness. Patrick Rieder and Sam Zeigler, Assistant Attorneys General, represented Defendant and called Warren as a witness. Plaintiffs' Exhibits PE 1 to PE 3763 and PR 1 to PR 13 were admitted into evidence. Defendant's Exhibits DE 1 to DE 3294 and DR 1 to DR 19 were admitted into evidence. Per stipulation of the parties, the court will not consider the additional commentary contained in the rebuttal exhibits and will only focus on the numbers contained therein.

## I. INTRODUCTION

These consolidated appeals arise from related business activities involving members of the Kahl family. Although the cases were tried together due to overlapping ownership interests and shared evidentiary issues, this appeal concerns a narrower set of activities attributable to Plaintiff, plus some alleged income and losses from ownership interests in his family's business entities. As a result, much of the evidence concerning the Kahl family business pass-through issues appear in the related cases.

Notwithstanding the more limited scope of Plaintiff's activities, the court encountered the same fundamental difficulties present across the consolidated matters: Plaintiffs' records were incomplete, disorganized, and, in many instances, reconstructed after-the-fact. Prior to trial, the court determined that Defendant's spreadsheets would serve as the foundational reference materials for the evidentiary phase of the proceedings. Accordingly, the court conditioned the admission of Plaintiffs' exhibits on the use of those spreadsheets as the analytical baseline for organizing the evidence.[2]

---

[2] The court conditioned admission of Plaintiffs' exhibits pursuant to ORS 305.501(4) (statutory or technical rules of evidence are not required in the Magistrate Division) and *Reed v. Dept. of Rev.*, 310 Or 260, 270, 798 P2d 235 (1990) (Peterson, J., concurring) (the Tax Court can require a taxpayer "to put the evidence into some minimally coherent form before" its admission).

## II. STATEMENT OF FACTS

This case concerns the income and expenses reported by, or attributed to, Plaintiff for the 2015 and 2016 tax years. In addition to wage income, Plaintiff reported or was attributed income, losses, and deductions connected to several closely held entities in which members of the Kahl family held interests. The principal disputed adjustments are: Defendant's bank deposit analysis for 2015 and 2016, the 2015 and 2016 capital gain determinations, 2016 imputation of pass-through income from Dancing Zorba, and the 2016 flow-through income from Biogen, Celebrity Tan, and Kahl & Co.

Warren is a Manager I with the Oregon Department of Revenue and has worked as an auditor for approximately seventeen years. She became involved in this matter as part of Defendant's filing enforcement efforts after Plaintiff failed to file Oregon income tax returns for 2015 and 2016. (*See also* Notice and Demand to File for 2015, DE 636, and for 2016, DE 729.) Defendant later received those returns, conducted an audit, and determined a deficiency. Plaintiff requested a conference and then appealed to this court. During the pendency of this appeal, Warren reviewed additional documents produced in discovery, which were not available to the auditor or conference officer. She prepared spreadsheets and summary workbooks analyzing Plaintiff's reported income, expenses, and income attributed from related pass-through entities. That review led Defendant to revise and increase certain adjustments from the audit and conference positions.

Warren testified that Plaintiff held ownership interests in multiple pass-through entities during the tax years at issue, including Celebrity Tan, Biogen, Kahl & Co., Kahl Properties, and Dancing Zorba. (*See also* DE 626-629.)

/ / /

A.      *2015 Tax Year*

For the 2015 tax year, the principal disputed adjustments concern Defendant's bank deposit analysis and its determination that Plaintiff realized unreported capital gain income. (DE 678.)

1.      *2015 Bank deposit analysis*

For the 2015 tax year, Warren used a bank deposit analysis to determine whether Plaintiff had unreported income. She described that method as listing all deposits reflected on his bank statements, classifying deposits where possible, treating unidentified deposits as unknown, and then comparing the results to Plaintiff's return. The materials used for the 2015 analysis included bank statements produced during the audit, together with additional bank statements and deposit information later obtained by subpoena during discovery. Warren's review of Plaintiff's bank deposit analysis was summarized in Defendant's 2015 Workbook. (DR 6.)

Warren testified that Plaintiff was given opportunities during discovery to explain unidentified deposits. She further testified that, during the audit and conference stages, Defendant did not yet have sufficient information to complete a full 2015 bank deposit analysis. That analysis was completed only after subpoenaed bank records and additional deposit information were obtained during discovery. As a result, no "other income" adjustment appeared at the audit or conference stages.

On cross-examination, Warren acknowledged that Plaintiff's 2015 return included a Schedule E reporting rental income. She testified, however, that she could not determine whether the unidentified deposits represented rent payments because she had not received rental agreements or other records showing recurring rent amounts or payment patterns.

/ / /

Based on the 2015 bank deposit analysis, Defendant increased Plaintiff's "other income" from $0 at audit and conference to $23,591. (Summary of Adj, 2015 DK, line E14.)

2.      *2015 Capital gain*

Warren testified that the 2015 capital gain worksheet was separate from the bank deposit analysis and was prepared to determine whether Plaintiff had received distributions, or those that could be imputed to him, from Kahl family businesses in excess of basis that would be taxable as capital gain. Warren's worksheets on this issue were drawn from Kahl Properties' books, including member draw accounts and note-payment entries, which Defendant treated as distributions reflected on the books.

Warren identified nine checks totaling $130,000 and, based on the K-1 information reported from Celebrity Tan and Biogen and on checks written to a relative, Youssef Kahl, allocated $19,500 of that amount to Plaintiff. (Daniel Kahl Magistrate Auditor's Workbook 2015.) She treated a check from Kahl Properties to Biogen, marked "loan," as a distribution because the books recorded it in a draw account. (DE 640.) She likewise treated checks for $25,000 and $30,000 as distributions because they were entered on the books as draws. (DE 648-49.) Three checks from Kahl Properties to Celebrity Tan were also recorded under a draw account and corresponded to entries on the books. Warren further testified that three checks to Youssef Kahl were reflected as account-status or accounts-payable payments, but Defendant received no documentation for an underlying note and, because the checks were made to a family member, she treated them as distributions. (*See also* DR 6.)

Warren testified that Defendant used a beginning basis of zero for Plaintiff because it did not receive basis calculations, the conference officer had determined basis to be zero, and Defendant did not find evidence of Plaintiff's contributions to Kahl Properties. She opined that

if basis had existed, she would have expected to see an owner's account reflecting contributions and distributions together with checks showing contributions. Warren noted that figures on K-1s presented at trial did not match the books with respect to contributions and distributions and that the books did not show contributions or distributions for Plaintiff in the relevant sections. Based on that analysis, Defendant increased Plaintiff's 2015 income by $19,500 as capital gain. (Summary of Adjustments Return to Magistrate, 2015 DK, Box E15.)

Defendant's 2015 summary workbook reflects the progression of Plaintiff's reported income, Defendant's audit and conference positions, and the magistrate-stage adjustments, including the $23,591 "other income" adjustment and the $19,500 capital gain adjustment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| | 2015 Daniel Return | Audit | Conference | Magistrate | Adjustment |
|---|---|---|---|---|---|
| Wages | $51,400.00 | $51,400.00 | $51,400.00 | $51,400.00 | $0.00 |
| Schedule E: | | | | | |
| Celebrity Tan non passive loss | -$11,547.00 | $4,282.00 | -$5,109.00 | -$1,613.30 | $9,933.70 |
| Biogen Flow Through Adjustment | $14,344.00 | $48,573.00 | $34,472.00 | $31,098.30 | $16,754.30 |
| Biogen 179 | $0.00 | -$8,752.00 | $0.00 | -$8,752.00 | $8,752.00 |
| Dancing Zorba Pass through income | $1,824.00 | $32,479.00 | $32,479.00 | $29,204.10 | $27,380.10 |
| Kahl & Co flow through | -$3,000.00 | $29,399.00 | -$1,888.00 | -$1,920.90 | $1,079.10 |
| Kahl & Co passive rental income | | | $1,800.00 | $1,800.00 | $1,800.00 |
| Kahl & Properties | | | -$2,925.00 | -$2,881.35 | -$2,881.35 |
| Personal Rental | -$3,379.00 | -$3,379.00 | -$3,379.00 | -$3,379.00 | $0.00 |
| **Schedule E total** | **-$1,758.00** | **$102,602.00** | **$55,450.00** | **$43,555.85** | **$45,313.85** |
| Other Income | | | | $23,591.00 | $24,983.00 |
| Captial Gain | | | | $19,500.00 | $19,500.00 |
| | | | | | |
| **Total Income** | **$49,642.00** | **$154,002.00** | **$106,851.00** | **$138,047.00** | **$88,405.00** |
| SE Tax | $0.00 | -$5,246.00 | -$2,295.00 | -$3,643.00 | $3,643.00 |
| AGI | $49,642.00 | $148,756.00 | $104,556.00 | $134,404.00 | $84,762.00 |
| | | | | | |
| Oregon Return | | | | | |
| AGI | $49,642.00 | $148,756.00 | $104,556.00 | $134,404.00 | $84,762.00 |
| Federal Tax Liability | -$5,625.00 | -$5,625.00 | -$5,625.00 | -$5,625.00 | $0.00 |
| Standard Deduction | -$2,145.00 | -$2,145.00 | -$2,145.00 | -$2,145.00 | $0.00 |
| Taxable Income | $41,872.00 | $140,986.00 | $96,786.00 | $126,634.00 | $84,762.00 |
| | | | | | |
| Tax before credits | $3,532.00 | $12,598.00 | $8,476.00 | $11,177.00 | $7,645.00 |
| Exemption Credit | -$194.00 | $0.00 | $0.00 | $0.00 | $194.00 |
| Withholding | -$2,819.00 | -$2,819.00 | -$2,819.00 | -$2,819.00 | $0.00 |
| Kicker | -$219.00 | -$219.00 | -$219.00 | -$219.00 | $0.00 |
| **Tax after credits/withholding** | **$300.00** | **$9,560.00** | **$5,438.00** | **$8,139.00** | **$7,839.00** |
| | | | | | |
| Penalty | | $1,852.00 | $1,028.00 | $1,568.00 | |

The summary workbook reflects Warren's recalculation of Plaintiff's 2015 tax liability based on Defendant's revised conclusions. Except as otherwise noted in this decision, the court accepts the revised 2015 amounts shown in Defendant's summary workbook above. Defendant also computed a penalty at 20 percent of the underpayment.

/ / /

/ / /

B.      *2016 Tax Year*

For the 2016 tax year, the principal disputed adjustments concern Defendant's bank deposit analysis, its imputation of pass-through income from Dancing Zorba, and related flow-through income adjustments involving Biogen, Celebrity Tan, and Kahl & Co.  (DE 757.)

1.      *2016 Bank deposit analysis*

Warren testified that Defendant's 2016 summary workbook reflected an increase in "other income" between the audit or conference stage and Defendant's later magistrate-stage position after discovery.  (DR 7.)  That analysis identified $33,421.30 in deposits as unexplained before certain items were filtered.  After reviewing subpoenaed information, Defendant ultimately treated four deposits as wages rather than unexplained income.  (*Id.*)

Warren further testified that deposits related to property activity raised questions for Defendant because the property appeared to be a rental, ownership had shifted among Kahl family members, and Defendant did not receive satisfactory answers about the nature of the payments.  For those reasons, Defendant treated the deposits as income after determining they appeared to involve a business transaction relating to a known rental property.  One line item in the 2016 summary workbook therefore reflected "other income" derived from the bank deposit analysis.

On cross-examination, Warren acknowledged that two deposits previously treated as unexplained income—$1,661.48, made on January 19, 2016, and $1,661.48 made on July 20, 2016—were actually wages and should not have been included as additional income.  Based on that concession, Plaintiff's 2016 bank deposit adjustment was overstated by $3,322.96.

/ / /

/ / /

2.     *2016 Dancing Zorba indexed pass-through income*

Plaintiff was a part owner of Dancing Zorba, a festival-based food service operation, and reported income and deductions from that entity in 2016. Dancing Zorba did not file a 2016 income tax return, despite Defendant's demand that it do so. The entity's 2015 income was determined by the court in *Edward Kahl v. Department of Revenue*, TC-MD 230010R, and that figure served as the baseline for Defendant's 2016 reconstruction.

Because Dancing Zorba did not file a 2016 return and Defendant lacked sufficient information to determine what should have been filed, Defendant used an indexing method for filing enforcement. Under that method, Defendant began with Dancing Zorba's 2015 income, as determined in the *Edward Kahl* case at $108,263, applied CPI indexing, and arrived at an indexed 2016 income of $110,357. (Daniel Kahl Magistrate Auditor's Workbook 2016.) Defendant then applied Plaintiff's last available K-1 ownership percentage of 30 percent and calculated $33,107 of income attributable to Plaintiff from Dancing Zorba for 2016. As of the date of trial, Dancing Zorba's 2016 return had still not been filed.

3.     *2016 Celebrity Tan, Biogen, and Kahl & Co. flow-through items*

The 2016 flow-through adjustments for Biogen, Celebrity Tan, and Kahl & Co. attributable to Plaintiff's ownership interests in those entities are addressed in the court's decision in *Nidal Kahl and Panayiota Kahl v. Department of Revenue*, TC-MD 230009R. The entity-level computations underlying those adjustments are set out in that decision and are incorporated here by reference to the extent they bear on Plaintiff's ownership share. For purposes of this case, Defendant applied flow-through income of $66,507.98 from Biogen, $21,300 from Celebrity Tan, a $59 loss from Kahl & Co., and $798 of passive rental income from Kahl & Co.

4.    *Summary Workbook for 2016*

Defendant's 2016 summary workbook reflects the progression of Plaintiff's reported income, the audit position, the conference position, and Defendant's revised position after discovery.

| | 2016 Daniel | | | | |
| --- | --- | --- | --- | --- | --- |
| | Return | Audit | Conference | Magistrate | Adjustment |
| Wages | $57,200.00 | $57,200.00 | $57,200.00 | $57,200.00 | |
| Capital Gain | | $5,635.00 | $0.00 | $0.00 | |
| Schedule E: | | | | | |
| Celebrity Tan non passive loss | -$11,500.00 | $91,030.00 | $22,908.00 | $21,300.00 | $37,728.00 |
| Biogen Flow Through Adjustment | $14,050.00 | $61,346.00 | $61,247.00 | $66,507.98 | $52,457.98 |
| Dancing Zorba Pass through income | $2,000.00 | $33,107.00 | $33,107.00 | $33,107.00 | $31,107.00 |
| Kahl & Co Flow through | | $3,634.00 | -$89.00 | -$59.00 | |
| Kahl & Co passive rental income | -$3,000.00 | $798.00 | $798.00 | $798.00 | $3,709.00 |
| Personal Rental | -$4,198.00 | -$4,198.00 | -$4,198.00 | -$4,198.00 | $0.00 |
| **Schedule E total** | **-$2,648.00** | **$185,717.00** | **$113,773.00** | **$117,455.98** | **$120,103.98** |
| Other Income | | $43,103.00 | $36,452.00 | $41,261.00 | $41,261.00 |
| Student Loan Interest | -$838.00 | $0.00 | $0.00 | $0.00 | $838.00 |
| | | | | | |
| **Total Income** | **$53,714.00** | **$291,655.00** | **$207,425.00** | **$215,917.00** | $162,203.00 |
| | | | | | |
| AGI | $53,714.00 | $291,655.00 | $207,425.00 | $215,917.00 | $162,203.00 |
| | | | | | |
| Oregon Return | | | | | |
| AGI | $53,714.00 | $291,655.00 | $207,425.00 | $215,917.00 | $162,203.00 |
| Federal Tax Liability | -$6,500.00 | $0.00 | $0.00 | $0.00 | $6,500.00 |
| Taxable refunds | | | | | |
| Standard Deduction | -$2,155.00 | -$2,155.00 | -$2,155.00 | -$2,155.00 | $0.00 |
| Taxable Income | $45,059.00 | $289,500.00 | $205,270.00 | $213,762.00 | $168,703.00 |
| | | | | | |
| Tax before credits | $3,819.00 | $27,300.00 | $18,961.00 | $19,801.00 | $15,982.00 |
| Exemption Credit | -$195.00 | $0.00 | $0.00 | $0.00 | $195.00 |
| Withholding | -$3,120.00 | -$3,120.00 | -$3,120.00 | -$3,120.00 | $0.00 |
| Refund | | | | | |
| **Tax after credits/withholding** | **$504.00** | **$24,180.00** | **$15,841.00** | **$16,681.00** | **$16,177.00** |
| | | | | | |
| Penalty | | $4,735.00 | $3,067.00 | $3,235.00 | |

The court accepts Defendant's 2016 workbook, with the exception of $3,322.96 of deposits included in the bank deposit analysis as income but later conceded as wages that had already been accounted for.

## III. ANALYSIS

Oregon taxable income is defined by reference to the Internal Revenue Code (IRC), subject to certain modifications not relevant here. ORS 316.007; ORS 316.022(6).[3] For adjustments included in the original assessment, Plaintiff bears the burden to show error by a preponderance of the evidence. ORS 305.427. For increases first sought in Defendant's Amended Answer, Defendant bears the burden to prove the additional amounts. *See Donohoe v. Dept. of Rev.*, TC-MD 150521N, 2016 WL 4446635 at *3 (Or Tax M Div, Aug 23, 2016).

Taxpayers must maintain records sufficient to establish the amounts of their income and deductions reported on their returns. *See* IRC § 6001; Treas Reg § 1.6001-1(a). When a taxpayer's records are inadequate or do not clearly reflect income, Defendant may prove unreported income by any practicable method of reconstruction reasonably calculated to reflect income. *Danielson v. Dept. of Rev.*, TC-MD 160282C, 2017 WL 5158730 at *3 (Or Tax M Div, Nov 7, 2017) (quoting *Brenner v. Dept. of Rev.*, 9 OTR 299, 306 (1983). Once Defendant has made a reasonable reconstruction, the taxpayer bears the burden to show error in that reconstruction, including by identifying omitted offset, duplication, or deposits from nontaxable sources. *Petzoldt v. Comm'r*, 92 TC 661, 687 (1989).

Plaintiff did not appear for trial and no witnesses testified on his behalf. The documents admitted on his behalf did not provide sufficient information to meet his burden of proof on the adjustments included in the original assessment. The remaining analysis therefore addresses whether Defendant has met its burden of proof on the adjustments first sought in its Amended Answer, and whether Defendant's reconstruction was reasonable across both tax years.

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013. The relevant statutes were not revised between 2013 and 2015.

A.    *2015 Tax Year*

1.    *Bank deposit analysis*

As discussed above, when a taxpayer's records do not clearly reflect income, Defendant may use a reasonable method of reconstruction. In the bank-deposit analysis, deposits are treated as prima facie evidence of taxable receipts unless shown to be derived from a nontaxable source. *See Ekwenugo v. Comm'r*, 102 TCM (CCH) 321, 2011 WL 4484788 at *3 (2011) (citations omitted). Defendant's reconstruction is not required to be exact; it need only be reasonable in light of the surrounding facts and circumstances. *Petzoldt,* 92 TC at 687. Once Defendant has made that showing, the taxpayer must show error in the reconstruction, including by identifying duplication, omitted offsets, or deposits from nontaxable sources. *Id*.

The court finds that Defendant's bank deposit analysis was reasonable. Defendant tied the deposits it treated as income to Plaintiff's bank records and revised its analysis as additional records became available during discovery. The fact that the "other income" adjustment did not appear until the magistrate stage is explained by Defendant's lack of access to complete bank records until subpoenas were served during this proceeding.

Plaintiff's cross-examination raised the suggestion that some unexplained deposits may have represented rent payments already reported on his Schedule E. The court has considered that suggestion. However, Plaintiff offered no rental agreements, payment records, or tracing evidence connecting any specific deposit to reported rental income. The burden to identify deposits from nontaxable or previously reported sources rested with Plaintiff, and he did not meet it. Conversely, Defendant carried its burden as to the 2015 bank deposit analysis adjustment of $23,591, and that adjustment is sustained.

/ / /

2. *2015 Capital gain/basis*

Defendant's 2015 capital gain adjustment of $19,500 arose from the determination that distributions received from Kahl Properties exceeded Plaintiff's basis in that entity. Defendant used a beginning basis of zero because it received no verifiable support for Plaintiff's basis calculations, the conference officer had previously determined basis to be zero, and Defendant found no evidence of Plaintiff's contributions to Kahl Properties in the available records. Warren testified that the books did not show contributions or distributions attributable to Plaintiff in the relevant sections and that K-1 figures presented were inconsistent with the books and therefore not reliable evidence of basis.

Plaintiff offered no basis calculations, contribution records, or other evidence to rebut the zero-basis assumption. The court finds Defendant's use of a zero beginning basis was reasonable under the circumstances. The $19,500 capital gain adjustment is sustained.

B. *2016 Tax Year*

1. *Bank deposit analysis*

As with 2015, Plaintiff's cross-examination raised the suggestion that some of the unexplained deposits may have represented cash receipts from rental properties. Plaintiff offered no testimony, records, or tracing evidence connecting any specific deposit to reported rental income or otherwise showing that the deposits were improperly treated as unreported income.

Warren conceded at trial that two deposits in the amount of $1,661.48 each, made on January 19, 2016, and July 20, 2016, were wages and should not have been included as unexplained income. The court therefore sustains the 2016 bank-deposit adjustment as reduced by $3,322.96.

/ / /

2. *2016 Dancing Zorba pass-through income*

Plaintiff was a part owner of Dancing Zorba and reported income and deductions from that entity for 2016. Dancing Zorba did not file a 2016 return despite Defendant's demand. Under those circumstances, Defendant could not rely on an entity return to determine the amount of income properly attributable to Plaintiff.

Because Dancing Zorba operated largely in cash and did not file a 2016 return, Defendant lacked sufficient entry-level information to support a direct reconstruction of income. A bank deposit analysis was not practicable given the cash-based nature of the business and the absence of entry-level bank records from which gross receipts could be reliably determined. Defendant instead used an indirect method. It began with Dancing Zorba's 2015 income, as determined in *Edward Kahl v. Department of Revenue*, TC-MD 230010R. Defendant then applied CPI indexing to estimate 2016 income of $110,357 and attributed 30 percent of that amount to Plaintiff based on his last available K-1 ownership percentage. That calculation yielded $33,107 of income attributable to Plaintiff.

Where available records do not clearly reflect income, Defendant may use any practicable method reasonably calculated to determine income under the circumstances. *Brenner*, 9 OTR at 306. Defendant here faced a non-filing pass-through entity, a cash-based business, and limited available information. Its use of an indirect projection method, grounded in a verified prior year income figure and an established ownership percentage, was a reasonably practicable approach under those constraints.

Although CPI indexing is necessarily approximate, the court finds it reasonable here because Plaintiff offered no alternative income figure, no entity-level records, and no evidence showing that Dancing Zorba's income materially differed from the indexed estimate. The court

finds that Defendant's methodology was reasonable and sustains the Dancing Zorba income adjustment of $33,107.

3.    *2016 Biogen, Celebrity Tan, and Kahl & Co. flow-through income*

The entity level computations underlying the 2016 flow-through adjustments for Biogen, Celebrity Tan, and Kahl & Co. are addressed in the court's decision in *Nidal Kahl and Panayiota Kahl v. Department of Revenue*, TC-MD 230009R, and are incorporated here by reference. The court found those adjustments to be properly supported in that decision. As applied to Plaintiff, Defendant used his specific ownership percentages to calculate his share of the resulting income and losses: flow-through income of $66,507.98 from Biogen, $21,300 from Celebrity Tan, a $59 loss from Kahl & Co., and $798 of passive rental income from Kahl & Co. Plaintiff offered no evidence to rebut those figures or to challenge the ownership percentages applied. The court finds that Defendant met its burden as to the 2016 flow-through adjustments, and those adjustments are sustained as reflected in Defendant's summary workbook.

## IV.  CONCLUSION

After careful consideration, the court concludes that Plaintiff has not met his burden of proof. The court further concludes that Defendant has met its burden with respect to the increased deficiency asserted in its cross-claim. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER THE DECISION OF THIS COURT that Defendant's cross-claim to increase the deficiency is granted as stated in its two workbooks included above, with the exception that $3,322.96 should be removed from unexplained income for the 2016 tax year.

 

RICHARD D. DAVIS
MAGISTRATE

***To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court. Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Richard D. Davis and entered on July 2, 2026.***